UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| CRYSTAL MELTON, *Executor of the Estate of Wallace Melton*, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| MINNESOTA LIFE INSURANCE, | ) ) ) |
| Defendant. | ) ) ) |

No. 6:23-CV-174-REW-HAI

OPINION AND ORDER

\*\*\* \*\*\* \*\*\* \*\*\*

**I.    Background**

Defendant Minnesota Life Insurance Company is the issuer, underwriter, and insurer of the Accidental Death & Dismemberment ("AD&D") Policy[1] at the center of this lawsuit. *See* DE 35 (Amended Complaint) ¶ 7. Defendant issued the policy to American Electric Power Service Corporation ("AEP"), who is the plan sponsor. *Id.* ¶ 11. Wallace Melton was an AEP employee insured under the AD&D Policy. *See id.* ¶ 13. Plaintiff Crystal Melton is Mr. Melton's named beneficiary. *See id.* ¶ 6.

The AD&D Policy generally provides for a lump sum benefit payable to the beneficiary in the event of the insured's accidental death. *See id.* ¶ 12. The insured may also elect supplemental coverage. *See id.* ¶ 12. Beyond the basic coverage, Mr. Melton elected an additional $455,000 in supplemental AD&D coverage. *See id.* ¶¶ 13–14. Mr. Melton died in June 2022, and Plaintiff filed a claim for benefits under the Policy. *See id.* ¶¶ 15–16. Defendant denied her claim in October 2022. *See id.* ¶ 17.

---

[1] The Policy consists of both basic and supplemental AD&D Insurance. *See* DE 35 ¶ 12.

1

The denial letter stated, "If you feel our current information is incorrect and you would like to appeal this decision, please see the enclosed notice of ERISA Appeal Rights. Note that appeals must be submitted to our office in writing, along with any supporting documentation." *See* DE 1-8 (Denial Letter) at 2. The denial letter accordingly attached the notice purportedly outlining Plaintiff's appeal rights. *See id.* at 3. The notice stated, in relevant part:

> You have the right to appeal an adverse benefit determination regarding your claim. Minnesota Life Insurance Company promises there will be a full and fair review of your appeal based on the additional information you provide.
>
> Please note the following if you wish to appeal our decision regarding your claim:
>
> - As a result of the National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak, you are entitled to additional time to appeal this adverse benefit determination. We will accept your appeal during the period of March 1, 2020 through 120 days after the announced end of the National Emergency or such other date announced by Employee Benefits Security Administration, Department of Labor, Internal Revenue Service, and Department of Treasury, as set forth in 85 FR 23651-01.
>
> - You may submit any written comments, documents, records and other information relating to this claim. Our review will take into account all additional information submitted by you and related to your claim without regard to whether such information was submitted or considered in our initial decision. . . .
>
> - You have the right to bring a civil action under section 502(a) of ERISA following an appeal of an adverse benefit determination.
>
> - Any civil action must be brought within a certain time period following an appeal. Please review your policy and plan documentation carefully to fully understand the time limitations that apply.

*Id.*

The record contains three additional sets of documents related to the AD&D Plan: the AD&D Insurance Policy, the AD&D Certificate of Insurance, and the summary plan description

(the "SPD") of the AD&D Plan.[2] *See* DE 1-5 (AD&D Insurance Policy); DE 32-1 (Response, Exhibit A, AD&D Certificate) at 41–61; DE 1-9 (the SPD). Both the AD&D Insurance Policy and the AD&D Certificate include "specifications pages." *See* DE 1-5 at 2–7[3]; DE 32-1 at 42–47. Save some introductory information as to the policy anniversary and premium due dates, the content in the specifications pages for both documents is identical. *See id.* The AD&D Certificate defines the specifications pages as "[t]he outline which summarizes your coverage under the policyholder's plan of insurance." DE 32-1 at 48. The AD&D Insurance Policy lists the same definition. *See* DE 1-5 at 40. The specifications pages also contain identical sections entitled "Plan of Insurance." *See* DE 1-5 at 6–7; DE 32-1 at 46–47. The AD&D Insurance Policy and the AD&D Certificate both explain that "the policyholder's plan of insurance" is "shown on the specifications page attached to the group policy." DE 1-5 at 41; DE 32-1 at 49. Neither document—including the specifications pages and the "Plan of Insurance" sections—sets forth an administrative appeals process for an adverse benefit determination. *See generally* DE 1-5; DE 32-1.

As it relates to legal proceedings, the AD&D Insurance Policy provides: "No legal action may be brought to recover on this policy within the first sixty days after written proof of loss has been given as required by this policy. No action may be brought after three years from the time written proof of loss is required to be given." DE 1-5 at 32. The AD&D Certificate has similar language: "No legal action may be brought to recover on this certificate within the first sixty days after written proof of loss has been given as required by this certificate. No such action may be

---

[2] At times, the parties seem to use "plan" and "policy" interchangeably. For sake of clarity and precision, the Court will instead rely on the nomenclature used in this paragraph: the AD&D Insurance Policy, the AD&D Certificate, the specifications pages contained therein, the Plan of Insurance contained therein, and the SPD.

[3] Though the filing includes additional versions of the AD&D Insurance Policy's specifications pages, this specification page is the most recent and therefore, the operative specifications page for the AD&D Insurance Policy.

3

brought after three years from the time written proof of loss is required to be given." DE 32-1 at 41.

However, the SPD includes a section titled "Appealing the Initial Determination." *See* DE 1-9 at 39–40. This section outlines the procedures for appealing the denial of a benefits claims. *See id.* The SPD also includes a notice stating:

> This is a summary of the American Electric Power System Life and Accident Insurance Plan . . . This description of the [Plan] is not intended as a contract or a guarantee of current or future benefits. . . . This Summary Plan Description is an overview of the Plan documents as they apply to the benefits described herein. In the event of a conflict between this Summary and the Plan documents, the applicable Plan documents (excluding this Summary Plan Description) shall govern.

*See* DE 1-9 at 21. Elsewhere, the SPD further notes:

> This [SPD] provides a summary of the life and AD&D benefits available to eligible employees. In some instances, full details of the plans are contained in the official plan documents and/or insurance contracts. If a provision described in this SPD differs from the provision of the applicable plan document and/or insurance contract, the plan document and/or insurance contract prevails.

*Id.* at 44.

Plaintiff did not pursue an administrative appeal following the denial of her claim; instead, she filed a lawsuit directly in Kentucky state court. *See* DE 1 (Notice of Removal). Defendant subsequently removed the case to this court. *See id.* Plaintiff brings a breach of contract claim against Defendant for the denial of benefits, filing her complaint pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(e)(1) and § 1132(f).[4] *See*

---

[4] Plaintiff initially brought her complaint based on state law claims, *see* DE 1-2 (State Court Record) at 2–5, but severed and remanded the state law claims against another additional defendant back to state court, *see* DE 25 (Agreed Order). Construing Plaintiff's remaining claim as one governed by ERISA, Defendant filed the instant motion for summary judgment. *See generally* DE 29 (Motion). In the midst of summary judgment briefing, Plaintiff filed the amended complaint (now, the operative complaint) to recast her remaining state law claim as one under ERISA. *See* DE 30 (Unopposed Motion to File Amended Complaint). Because Plaintiff's amended complaint is substantively equivalent to her initial complaint and

*id.* ¶¶ 4, 30–34. Plaintiff alleges that the denial of benefits violated various ERISA claim regulations. *See id.* ¶ 20.

Defendant now moves for summary judgment, arguing that Plaintiff failed to exhaust her administrative remedies before filing her lawsuit. *See generally* DE 29 (Motion). Plaintiff responded, *see* DE 32, and Defendant replied, *see* DE 39. This matter is ripe for review.

## II.     Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of showing the absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986). If the moving party satisfies its burden, the burden then shifts to the non-moving party to produce "specific facts" showing a "genuine issue" for trial. *Id.* (citing Fed. R. Civ. P. 56(e)). "A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Wright v. City of Euclid*, 962 F.3d 852, 864 (6th Cir. 2020)

---

was filed to better conform with case developments, Defendant's motion for summary judgment applies with equal force to Plaintiff's amended complaint. Indeed, the motion hinges on ERISA-specific arguments. *See generally* DE 29. For those reasons and for the sake of efficiency, the Court will construe the motion as one for summary judgment on the *amended* complaint. *See Crawford v. Tilley*, 15 F.4th 752, 759 (6th Cir. 2021) (in the context of motions to dismiss, explaining that "district courts may exercise their discretion and apply a pending motion . . . to portions of an amended complaint that are substantially identical to the original complaint.") (citation and quotation marks omitted); *Gov't Emps. Ins. Co. v. Mount Prospect Chiropractic Ctr., P.A.*, 98 F.4th 463, 472 (3d Cir. 2024) ("[D]istrict courts may, in their discretion, deny as moot motions directed to subsequently amended complaints ***or*** apply their arguments to the new complaint and dispose of them on the merits.") (emphasis added); *TERA II, LLC v. Rice Drilling D, LLC*, 679 F. Supp. 3d 620, 636 (S.D. Ohio 2023) ("[S]ubsequent filings of amended complaints do not necessarily moot prior motions for summary judgment where the claims remained substantively the same, unless the motion pertained to claims that were removed in the Amended Complaint."); *Moskovic v. City of New Buffalo*, Case Nos. 1:21-cv-144, 1:21-cv-674, 2022 WL 325402, at *3 (W.D. Mich. Feb. 3, 2022) ("Some courts have determined that a dispositive motion is not moot when the amended complaint is substantially identical to the original complaint. . . . And that is the case here, at least as far as Counts I and II are concerned. Thus, the Court will construe Plaintiffs' motion as if it were seeking summary judgment on Counts I and II of the *Second* Amended Complaint.") (emphasis in original) (citation and quotation marks omitted).

(citation and quotation marks omitted). In determining whether a genuine dispute exists, the Court considers all facts and draws all inferences in the light most favorable to the non-moving party. *See Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986); *Lindsay v. Yates*, 578 F.3d 407, 414 (6th Cir. 2009).

**III.     Analysis**

"The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans." *Aetna Health Inc. v. Davila*, 124 S. Ct. 2488, 2495 (2004). As relevant here, one such regulatory requirement is that a plan must memorialize its terms in a "written instrument." 29 U.S.C. § 1102(a)(1). A plan must also "establish and maintain reasonable procedures governing the . . . appeal of adverse benefit determinations." 29 C.F.R. § 2560.503-1(b); *see also id.* § 2560.503-1(h)(1) (A plan must "establish and maintain a procedure by which a claimant shall have a reasonable opportunity to appeal an adverse benefit determination to an appropriate named fiduciary of the plan, and under which there will be a full and fair review of the claim and the adverse benefit determination."). In addition, the plan is obligated to provide beneficiaries with an SPD that summarizes plan details, including procedures for reviewing denied claims and remedies for denied claims. *See* 29 U.S.C. § 1022; 29 C.F.R. § 2520.102-3(s). The SPD must be "sufficiently accurate and comprehensive to reasonably apprise . . . beneficiaries of their rights and obligations under the plan." § 1022(a).

ERISA also contains an "integrated enforcement mechanism" to provide a remedy when a plan fails to fulfill its regulatory requirements. *See Aetna Health*, 124 S. Ct. at 2495; *see also* 29 U.S.C. § 1132(a) (also known as "section 502(a)"). ERISA section 502(a) allows a plan beneficiary to bring a civil action "to recover benefits due to [her] under the terms of [her] plan." § 1132(a)(1)(B). Before bringing a civil action, the ERISA claimant must exhaust administrative

6

remedies. *See Liss v. Fid. Emp. Servs. Co.*, 516 F. App'x 468, 474 (6th Cir. 2013). The exhaustion requirement has two general exceptions: 1) "when resort to the administrative route is futile" or 2) the remedy is "inadequate." *Hitchcock v. Cumberland Univ. 403(b) DC Plan*, 851 F.3d 552, 560 (6th Cir. 2017) (citation and quotation marks omitted). The regulations also include an additional exception "in the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of" §§ 2560.503-1(b) and (h)(1). *See* § 2560.503-1(l)(1). Under those circumstances, a claimant is "deemed to have exhausted the administrative remedies available under the plan," and consequently, the claimant may "pursue any available remedies under section 502(a)." *Id.*

Courts must construe ERISA plans according to the "[g]eneral rules of contract interpretation." *Hunter v. Caliber Sys., Inc.*, 220 F.3d 702, 712 (6th Cir. 2000). In doing so, a court interprets a plan's provisions "according to their plain meaning, in an ordinary and popular sense," *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 556 (6th Cir. 1998), and "give[s] effect to the unambiguous terms of the plan," *Lockett v. Marsh USA, Inc.*, 354 F. App'x 984, 989 (6th Cir. 2009). Thus, "the starting point is the language of the [p]lan itself." *Farhner v. United Transp. Union Discipline Income Prot. Program*, 645 F.3d 338, 343 (6th Cir. 2011).

Defendant argues that the Court must dismiss Plaintiff's ERISA claim because she failed to exhaust her administrative remedies before filing suit. *See generally* DE 29-1 (Memorandum in Support). According to Defendant, the denial letter enclosure and the SPD "specifically outline the administrative appeal process to be utilized when a claim for benefits is denied." *Id.* at 5. Defendant states that the SPD is the "*only* plan document controlling claim and appeal procedures for life and accidental death insurance benefits" under the AD&D Plan. *Id.* (emphasis added). Because the record is devoid of any allegation or evidence that Plaintiff appealed the denial of benefits in

7

compliance with these procedures, Defendant maintains that Plaintiff did not properly exhaust her administrative remedies before seeking judicial relief. *See id.*

In response, Plaintiff concedes that she did not appeal the denial of benefits to Defendant before filing suit in this Court. *See* DE 32 at 2, 5, 6, 8–9. Instead, she claims that the AD&D Plan does not contain any administrative appeal requirement. *See id.* at 2. Citing to Sixth Circuit precedent, Plaintiff primarily argues that *Wallace v. Oakwood Healthcare, Inc.*, 954 F.3d 879 (6th Cir. 2020) forecloses any exhaustion requirement in this case. *See id.*

The determinative issue essentially boils down to one question: What documents constitute the "terms of the plan" such that their contents are binding and controlling? For purposes of this motion, the relevant documents are as follows: 1) the AD&D Insurance Policy, 2) the SPD, 3) the October 2022 denial letter and its enclosure, and 4) the AD&D Certificate of Insurance. Often, the parties use imprecise or varying language in referencing the documents key to this action, describing the same documents as the "policy" or "plan" without distinction. As it has done above, the Court must sift through the documents and categorize them appropriately.

"'The plan, in short, is at the center of ERISA.'" *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 134 S. Ct. 604, 612 (2013) (quoting *US Airways, Inc. v. McCutchen*, 133 S. Ct. 1537, 1548 (2013)). And the AD&D Plan must be memorialized in a "written instrument." *See* § 1102(a)(1). What, then, is the "plan" in this case as encapsulated in a "written instrument"?

Per the plain language of the AD&D Insurance Policy and the AD&D Certificate of Insurance, the AD&D Plan is the "Plan of Insurance" as "shown on the [respective] specifications page[s]." *See* DE 1-5 at 6–7, 41 (". . . the policyholder's plan of insurance . . . [is] shown on the specifications page attached to the group policy . . ."); DE 32-1 at 46–47, 49 (same). The AD&D Insurance Policy document itself is also a written instrument that forms part of the AD&D Plan.

8

*See Musto v. Am. Gen. Corp.*, 861 F.2d 897, 901 (6th Cir. 1988) ("[T]he insurance policy . . . is the 'written instrument' required by law."); *see also Frazier v. Life Ins. Co. of N. Am.*, 725 F.3d 560, 566 (6th Cir. 2013) ("[N]othing in Section 1101(b)(2) prohibits an insurance policy from being a plan document[.]"); *Krohn v. Huron Mem'l Hosp.*, 173 F.3d 542, 551 (6th Cir. 1999) ("We first consider the provisions of the long-term disability policy . . . which is the written instrument pursuant to which this employee benefit plan was established and maintained, as required by ERISA."); *Minerley v. Aetna, Inc.*, 801 F. App'x 861, 865 (3d Cir. 2020) ("[I]nsurance policies may serve as plan documents."); *Cinelli v. Sec. Pac. Corp.*, 61 F.3d 1437, 1441 (9th Cir. 1995) ("[I]t is clear that an insurance policy may constitute the 'written instrument' of an ERISA plan . . ."); *Gable v. Sweetheart Cup Co.*, 35 F.3d 851, 856 (4th Cir. 1994) ("An insurance policy may constitute the 'written instrument' of an ERISA plan."); *Walther v. Pension Plan for Salaried Emps. of Dayton-Walther Corp.*, 880 F. Supp. 1170, 1186 (S.D. Ohio 1994) ("[T]he insurance policies themselves are the written instruments required by law."). The AD&D Insurance Policy, as written, bolsters this interpretation with a clear directive: "This policy and your attached signed application contain the **entire contract** between you and us." DE 1-5 at 40 (emphasis added). To this point, the terms of the AD&D Plan therefore consist of the AD&D Insurance Policy (which includes the Plan of Insurance within its specifications pages) and the Plan of Insurance within the specifications pages of the AD&D Certificate. Since the AD&D Insurance Policy is inclusive of the Plan of Insurance, and the Plan of Insurance therein is identical to that in the AD&D Certificate, the Court considers the AD&D Insurance Policy as the primary plan document setting forth the terms of the AD&D Plan. In this way, the AD&D Insurance Policy is coextensive with the AD&D Plan.

Next, the SPD. Previously, Sixth Circuit precedent instructed that "statements in a summary plan are binding and if such statements conflict with those in the plan itself, the summary shall govern." *Edwards v. State Farm Mut. Auto. Ins. Co.*, 851 F.2d 134, 136 (6th Cir. 1988). That changed with *CIGNA Corp. v. Amara*, 131 S. Ct. 1866 (2011). In *Amara*, the Supreme Court held that "summary documents, important as they are, provide communication with beneficiaries *about* the plan, but [] their statements do not themselves constitute the terms of the plan." *Id.* at 1878 (emphasis in original); *see also US Airways*, 133 S. Ct. at 1543 n.1 ("We have made clear that the statements in a summary plan description communicate with beneficiaries about the plan, but do not themselves constitute the terms of the plan.") (quotation marks, brackets, and ellipses omitted). *Amara* thus indicates that the SPD here does not constitute the terms of the AD&D Plan and therefore, is not a controlling document.

Defendant cites to a slew of cases allegedly dispelling the notion that plan documents are limited to the text of the underlying policy or plan alone. *See* DE 39 at 4. Post-*Amara*, the Sixth Circuit has, in certain limited instances, recognized that an SPD may constitute a binding document establishing the terms of the relevant plan. *See, e.g., Butler v. FCA US, LLC*, 706 F. App'x 256, 258 (6th Cir. 2017); *Bd. of Trs. v. Moore*, 800 F.3d 214, 220 (6th Cir. 2015). However, as Defendant neglects to mention, those instances are limited to where the SPD itself explicitly provides that it is part of the plan's terms, the plan expressly incorporates the SPD, or the plan's terms allow a single document to function as both the SPD and the plan. *See Butler*, 706 F. App'x at 258 ("A summary plan description can be part of a plan's governing instrument, but only if the summary itself so provides."); *Moore*, 800 F.3d at 220 ("Nothing in *Amara* prevents a document from functioning both as the ERISA plan *and* as an SPD, if the terms of the plan so provide.") (emphasis in original); *see also Engleson v. Unum Life Ins. Co. of Am.*, 723 F.3d 611, 620 (6th Cir.

10

2013) ("SPDs lack controlling effect in the face of plan language to the contrary[.]"). A common theme emerges: unless the terms of the SPD or the plan explicitly provide otherwise, an SPD is not a controlling, binding plan document.

Such is the case here. The SPD makes no mention of its incorporation into the AD&D Plan; in fact, the document indicates the opposite. The SPD specifically states that it is not a contract, i.e., is not binding: "This description of the [Plan] is not intended as a contract or a guarantee of current or future benefits." *See* DE 1-9 at 21. The SPD also indicates that the AD&D Insurance Policy is *the* relevant governing document. *See id.* ("In the event of a conflict between this Summary and the Plan documents, the applicable Plan documents **(excluding this Summary Plan Description)** shall govern.") (emphasis added); *id.* at 44 ("If a provision described in this SPD differs from the provision of the applicable plan document and/or insurance contract, the plan document and/or insurance contract prevails."). The AD&D Insurance Policy makes no mention of the SPD, much less any language incorporating the SPD into the terms of the AD&D Plan. And the AD&D Insurance Policy and the SPD exist as two separate documents.

In support of its argument that the SPD is a binding and controlling plan document,[5] Defendant points to a declaration by Jamie Hill, the Director of Employee Benefits for AEP. *See* 29-1 at 5; DE 39 at 2 n.4, 3; DE 29-3 (Hill Decl.). Hill states that the SPD "along with the corresponding insurance policies and certificates, make up the entirety of the plan documents related to life and accidental death insurance for such eligible employees." Hill Decl. ¶ 5. Hill further avers that SPD is "the sole plan document controlling claim and appeal procedures for life and accidental death insurance benefits provided pursuant to the Plan." *See id.*

---

[5] In its submission, Defendant often refers to the SPD as the "Plan & SPD." *See, e.g.,* DE 39 at 1. This is a misnomer. As the Court has already found, nothing in the SPD or in the AD&D Insurance Policy indicates that the SPD and the Plan are one and the same. The language, in fact, expressly segregates their import and authority.

These statements do not change the Court's calculus. As a threshold matter, "[a]n SPD can be a document or instrument governing the plan without constituting the *terms* of that plan." *Liss*, 516 F. App'x at 474 (emphasis added). At bottom, whether a given document constitutes the terms of an ERISA plan is a matter of interpretation of that document's provisions in the full context. And contractual interpretation is a question of *law*. *Certain Underwriters at Lloyd's of London Subscribing to Pol'y No. HMPL 18-0164 & HMPL 17-0158 v. KG Admin. Servs., Inc.*, No. 20-3063, 855 Fed. Appx. 260 (Mem), 268 n.7 (6th Cir. May 14, 2021) ("[T]he interpretation of an insurance policy is a question of law[.]"); *see also Kovach v. Zurich Am. Ins. Co.*, 587 F.3d 323, 339 (6th Cir. 2009) ("The case before us has no unresolved factual issues; instead, its resolution revolves around the proper interpretation of the Plan provisions—a question of law[.]"); *Maurer v. Joy Techs., Inc.*, 212 F.3d 907, 914 (6th Cir. 2000) (in the context of a retiree health benefit plan, explaining that "[c]ontract interpretation is a question of law"). "It is well settled that courts should disregard conclusions of law . . . found in affidavits submitted for summary judgment." *Harrah's Ent., Inc. v. Ace Am. Ins. Co.*, 100 F. App'x 387, 394 (6th Cir. 2004) (citation and quotation marks omitted) (on summary judgment, disregarding an affidavit that "reach[ed] a series of legal conclusions" about "whether or not the parties intended to insure the Loss caused"). To the extent that Defendant intends for Hill's statements to establish that the SPD constitutes the terms (or part of the terms) of the AD&D Plan, those statements are, in actuality, legal conclusions disguised as evidence. The Court's consideration of those statements is therefore inappropriate. In any event, since the Court's decision hinges on a legal, rather than a factual, determination, the statements are ultimately irrelevant.

What of the October 2022 denial letter? The Court declines to recognize as controlling mere correspondence between a plan and its beneficiary absent express language establishing or

12

supporting that the letter constitutes the terms of the AD&D Plan, incorporating it into the AD&D Plan, or otherwise indicating its status as a contract between Plaintiff and Defendant. The Court also hesitates to deem the AD&D Certificate of Insurance a binding plan document, apart from the Plan of Insurance in its specifications pages. Similar to an SPD , the Certificate describes itself as "*summariz[ing]* the principal provisions of the group policy" and explains that "[t]he provisions *summarized* in this certificate are subject in every respect to the group policy." DE 32-1 at 41, 48 (emphasis added). Unlike the AD&D Insurance Policy, the AD&D Certificate does not include language representing that it is a contract. *See generally id.* at 41–61; *cf.* DE 1-5 at 40 ("This policy and your attached signed application contain the entire contract between you and us."). Regardless, the Court's designation of the AD&D Certificate is not determinative. The content of the AD&D Certificate is largely similar to and in some instances, a carbon copy of, the AD&D Insurance Policy. Most notably, the AD&D Certificate contains no provisions on administrative appeal procedures for denied claims.

The Court is therefore left with the AD&D Insurance Policy, the sole binding and controlling document constituting the terms of the AD&D Plan. The AD&D Insurance Policy (and, thus, the AD&D Plan) undisputedly omits any claims procedures, procedures for appealing adverse benefit determinations, explicit exhaustion requirements, or remedies for denied claims. *See* DE 32 at 5; DE 39 at 2–3; *see also* Hill Decl. ¶ 5. Regarding legal proceedings, the AD&D Insurance Policy only states, "No legal action may be brought to recover on this policy within the first sixty days after written proof of loss has been given as required by this policy. No action may be brought after three years from the time written proof of loss is required to be given." DE 1-5 at 32. In this context, *Wallace* is instructive and binding.

13

There, the insurer of the subject employee benefits plan sent the plaintiff a denial letter detailing the claims review process and the administrative exhaustion requirement. *See Wallace*, 954 F.3d at 885. The underlying plan document did not contain any procedures for claims review or an exhaustion requirement. *See id.* Instead of seeking administrative review, the plaintiff filed an ERISA lawsuit directly in federal court. *See id.* The insurer moved to dismiss the ERISA claim, contending that the plaintiff failed to exhaust her administrative remedies as established in the denial letter. *See id.* at 885. Similar to Defendant here, the insurer argued that "it was not required to include those procedures in its plan document because it detailed those procedures in its benefits denial letter to [p]laintiff." *Id.* at 887. The Sixth Circuit rejected that argument, finding that "for a plan fiduciary to avail itself of this Court's exhaustion requirement, its underlying plan document must—at minimum—detail its required internal appeal procedures." *Id.* at 888; *see id.* at 889 ("At minimum, a plan document must detail claims review procedures and remedies and must not mislead an employee into believing that there are no administrative remedies or that those remedies need not be exhausted."). And, although *Wallace* did not involve an SPD, the Sixth Circuit noted, "[A] summary plan description is just that: a summary of the plan. And if the SPD must include claims review procedures, surely the plan it summarizes must also include those procedures." *Id.* at 888.

The Sixth Circuit found the errors two-fold. One, in failing to include any review procedures or remedies for denied claims, the underlying plan document was "wholly non-compliant" with § 2520.102-3(s). *Id.* at 889. Second, "[i]f a plan document on which an SPD is based does not include information on its claims review procedures or remedies," then that SPD "cannot satisfy both statutory dictates that it 'sufficiently accurate[ly] and comprehensive[ly]' describe the terms of the plan and regulatory dictates that it include procedures for reviewing

14

denied claims [and] remedies available for denied claims." *Id.* at 888–89. Since the insurer "did not describe any internal claims review process or remedies in its plan document, the plan did not establish a reasonable claims procedure pursuant to ERISA regulations." *Id.* at 887. Therefore, the Sixth Circuit held that the proper remedy was to "deem the [p]laintiff 'to have exhausted the administrative remedies available under the plan.'"[6] *Id.* at 889 (quoting § 2560.503-1(l)).

*Wallace* mandates the same result here. The AD&D Insurance Policy—which constitutes the underlying plan—undisputedly excludes (except for a short waiting period) any claims procedures or remedies for denied claims. *See* DE 32 at 5; DE 39 at 2–3; *see also* Hill Decl. ¶ 5. Therefore, as in *Wallace*, the AD&D Insurance Policy ultimately violates § 2520.102-3(s). Contra to § 2560.503-1, the AD&D Insurance Policy contains no guardrails around or reference to appeals procedures. *See* DE 32 at 5; DE 39 at 2–3; *see also* Hill Decl. ¶ 5. The SPD and the denial letter do not cure these violations; the documents purport to summarize processes and procedures non-existent in the underlying plan. For the same reason, the SPD is not "sufficiently accurate and comprehensive to reasonably apprise" Plaintiff of her rights under the AD&D Plan, *see* § 1022(a), and fails to properly include procedures for the review of and remedies for denied claims, *see* § 2520.102-3(s). Defendant cannot circumvent regulatory requirements and attempt to enforce appeal procedures that it neglected to detail in its binding plan document. Since the AD&D Plan does not comply with the obligation to establish a reasonable claims procedure, and as *Wallace* compels, the Court, per § 2560.503-1(l), deems Plaintiff to have exhausted her administrative remedies. Thus, based on Sixth Circuit precedent, Plaintiff properly filed her lawsuit directly with

---

[6] Citing to *Wallace*, the Eighth Circuit also found that similar circumstances rendered the same result: "Requiring [a beneficiary] to exhaust internal review procedures that cannot be found in the Plan documents would thus render her reliance on those documents largely meaningless in this context. . . . [The insurer] asks that we impose on [the beneficiary] a requirement to exhaust remedies that are not in the contract the parties entered. We decline to do so." *Yates v. Symetra Life Ins. Co.*, 60 F.4th 1109, 1114 (8th Cir. 2023).

the Court following Defendant's denial of her claims without regard to the appeals procedures in the SPD and the denial letter.

Accordingly, the Court finds, as a matter of law, that Plaintiff did not fail to exhaust her administrative remedies. Simply, exhaustion is not a barrier to Plaintiff seeking judicial relief in this Court. The Court therefore denies Defendant's motion for summary judgment.

IV.     **Conclusion**

For the foregoing reasons, the Court **DENIES** DE 29.

This the 13th day of September, 2024.

Signed By:
*Robert E. Wier*
**United States District Judge**